

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

SCJ:WPC/FTB                                          *271 Cadman Plaza East*
F. #2013R01395                                      *Brooklyn, New York 11201*

June 16, 2014

By Hand and ECF

The Honorable Dora L. Irizarry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

       Re:    United States v. Syed Imran Ahmed
              Criminal Docket No. 14-277 (DLI)

Dear Judge Irizarry:

       The government respectfully writes to advise the Court about an issue that recently arose between the parties.  On Wednesday, June 11, counsel for the defendant, Moe Fodeman, Esq., of Wilson Sonsini Goodrich & Rosati, raised an objection to the government's obtaining emails exchanged between himself and his client using the Bureau of Prisons' ("BOP") Trust Fund Limited Inmate Computer System ("TRULINCS") because such correspondence, in his view, is a protected attorney-client communication.  Defense counsel is incorrect.

       As the Court may be aware, this Office routinely obtains inmates' TRULINCS emails, including emails exchanged between inmates and their attorneys.  This practice is proper and, despite Mr. Fodeman's protestations to the contrary, is consistent with Second Circuit precedent.

<u>Background</u>

       The BOP permits prisoners at the MDC to send and receive emails from inmate-specific accounts administered through TRULINCS.  Emails sent by prisoners through the TRULINCS system are monitored, stored and reviewed by the BOP, and inmates must confirm that they are aware of, and consent to, this review prior to their accessing the TRULINCS system.  Specifically, each time an inmate logs onto TRULINCS, the system generates a message to the inmate with the following warning:

The Department may monitor any activity on the system and search and retrieve any information stored within the system. By accessing and using this computer, I am consenting to such monitoring and information retrieval for law enforcement and other purposes.  I have no expectation of privacy as to any communication on or information stored with the system.

Further down the page, the same warning banner states:

I understand and consent to having my electronic messages and system activity monitored, read, and retained by authorized personnel.  **I understand and consent that this provision applies to electronic messages both to and from my attorney or other legal representative, and that such electronic messages will not be treated as privileged communications, and I have alternative methods of conducting privileged legal communication**.

(emphasis added).  In order to continue using the system and access their email, the inmate must click "I accept."

Similarly, non-inmate users of TRULINCS, **including their attorneys**, are provided with notice that all communications on the system are monitored.  To use TRULINCS, non-inmate users must be added to an inmate's "contact list."  Once the inmate adds someone to his or her contact list, the TRULINCS system sends a generated message to the proposed contact's email address.  That generated email states, inter alia, "[b]y approving electronic correspondence with federal prisoners you consent to have the Bureau of Prison staff monitor the content of all electronic messages exchanged."  The recipient of the email is then directed to a website where he or she must insert a specific code in order to be given access to TRULINCS.[1]

<u>Legal Analysis</u>

It is well established that communications sent by a prisoner to an attorney through media known by the prisoner (and the attorney) to be monitored by the BOP cannot qualify for protection under the attorney-client privilege because such communications are manifestly not intended to be kept confidential – an essential element of the privilege.  In <u>United States v. Mejia</u>, 655 F.3d 126, 133 (2d Cir. 2011), the Second Circuit held that an

---

[1] In addition, BOP's TRULINCS Program Statement 5265.13 specifically states that "special mail" recipients or other legal representatives on an inmate's contact list may be added to the TRULINCS system, with the acknowledgment that electronic messages exchanged with those individuals will not be treated as privileged communications and will be subject to monitoring.

inmate's communication over a telephone that the inmate knew was being recorded by prison authorities was not protected by the attorney-client privilege.  See Mejia, 655 F.3d at 133 ("We agree with the district court that, on the basis of the undisputed fact that [defendant] Rodriguez was aware that his conversation was being recorded by BOP, Rodriguez's disclosure to his sister of his desire to engage in plea discussions with his attorney was not made in confidence and thus constituted a waiver of the privilege.").  Other circuits have similarly held that when an inmate is aware that his calls are being recorded, those calls are not protected by a privilege.  See United States v. Hatcher, 323 F.3d 666, 674 (8th Cir. 2003) ("The presence of the prison recording device destroyed the attorney-client privilege. Because the inmates and their lawyers were aware that their conversations were being recorded, they could not reasonably expect that their conversations would remain private. The presence of the recording device was the functional equivalent of the presence of a third party."); United States v. Madoch, 149 F.3d 596, 602 (7th Cir. 1998) (holding that marital privilege did not apply when spouse seeking to invoke the privilege knew that the other spouse was incarcerated); see also United States v. Pelullo, 5 F. Supp. 2d 285, 289 (D.N.J. 1998) ("[T]o the extent that defendant engaged in telephone conversations with attorneys on the monitored line the communications were not privileged. Defendant had no expectation of privacy in these conversations. They were knowingly made in the presence of the Bureau of Prisons through its taping and monitoring procedures. This constitutes a waiver of any privilege that might otherwise have existed."); United States v. Lentz, 419 F. Supp. 2d 820, 827-28 (E.D. Va. 2005) ("an inmate's telephone conversations with counsel are not protected by the attorney-client privilege where, as here, the inmate is notified at the outset that the calls are recorded and subject to monitoring").  The reasoning of Mejia leads inescapably to the conclusion that emails sent to attorneys through the similarly monitored TRULINCS system cannot be privileged.

The American Bar Association ("ABA") has already acknowledged that the communications between inmates and their attorneys on TRULINCS are not privileged.  In February 2006, when TRULINCS was undergoing a limited initial rollout, the ABA's Governmental Affairs Office submitted a letter to Harley Lappin, the Director of the BOP. In that letter, the ABA urged the BOP to make permanent and extend the TRULINCS program, which was then being tested at several federal correctional institutions.  In its letter, the ABA acknowledged that the TRULINCS system would be monitored by the BOP and stated that TRULINCS emails are utilized for unprivileged communications:

> Although presenting confidentiality concerns, TRULINCS greatly enhances the attorney-client relationship by supplementing unmonitored forms of communication, that is legal mail, legal calls and professional visiting.  It affords attorneys and their incarcerated clients the possibility of making expedited contact when quick decisions must be made or non-privileged information relayed. . . .  TRULINCS also eases the burden on institution staff by relieving them of the responsibility of coordinating visits or calls for what are otherwise administrative, though time-sensitive, matters.

(emphasis added).

It should also be noted, as recognized in the ABA's letter, that the MDC does offer multiple alternative avenues through which inmates and attorneys can communicate in ways that indisputably maintain confidentiality, including (i) unmonitored, in-person visits; (ii) unmonitored telephone calls, which must be approved by a staff member; and (iii) "Special Mail" correspondence, which can only be opened in the presence of an inmate.

Discussion

The foregoing review of the TRULINCS system and relevant case law makes clear that neither the defendant nor his counsel had any reasonable factual or legal basis to believe that emails they exchanged over TRULINCS were protected by the attorney-client privilege.  To the extent defense counsel previously had a misguided view to the contrary, he is now on notice that his emails with Dr. Ahmed over TRULINCS are not privileged.

To the extent Mr. Fodeman (or previous defense counsel) may have already engaged in email communications with Dr. Ahmed based on the incorrect assumption that the explicit warnings on the TRULINCS system were somehow not controlling, the government agrees that the trial team will not access those emails.  Instead, to the extent it obtains Dr. Ahmed's TRULINCS emails, the government will assign personnel to segregate out any emails between defense counsel and Dr. Ahmed, dated before the date of this letter, to ensure that the trial team is not exposed to them.

Finally, it is worth noting that the government's position is not borne out of a hope to gain a strategic advantage by obtaining emails exchanged between attorneys and their clients.  Indeed, the government would be perfectly content if attorneys, such as Mr. Fodeman, elected not to use the TRULINCS system at all.[2]  Instead, the government's position is motivated by the explicit advisories on the TRULINCS system, the controlling case law and the need to preserve government resources.[3]

---

[2] As noted above, to the extent they wish to have privileged communications with their clients without traveling to the MDC, attorneys can communicate with their inmate clients on unmonitored telephone calls.  Specifically, with staff approval, inmates may place calls to their attorneys on a line that is not recorded.  In addition, inmates may place calls to their attorneys on a recorded line, but upon request, MDC staff typically has the ability to segregate the recordings of those calls from other telephone recordings produced to the government.

[3] This last concern is a real one.  It would be a tremendous waste of government resources, particularly in this time of periodic furloughs and hiring freezes, to appoint additional AUSAs to every case in which inmates have exchanged emails with their counsel in order to segregate out those attorney-client emails.  This is particularly true given the fact that every inmate and attorney using the system is on abundant notice that none of their emails are covered by the attorney-client privilege.

4

<u>Conclusion</u>

For the reasons described above, the government will segregate and not review any emails exchanged between the defendant and Mr. Fodeman prior to the date of this letter. However, the government respectfully requests that counsel be directed to cease and desist from sending communications he wishes to be covered by the attorney-client privilege over the TRULINCS system.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:   <u>/s/ F. Turner Buford</u>
F. Turner Buford
Trial Attorney
(718) 254-6483

cc:   Moe Fodeman, Esq. (by ECF)