

1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022

PHONE 212.999.5800
FAX 212.999.5899
www.wsgr.com

Morris J. Fodeman
Email: mfodeman@wsgr.com
Direct Dial: 212.497.7704

June 20, 2014

**VIA CM/ECF**

The Honorable Dora L. Irizarry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:     *United States v. Syed Imran Ahmed, M.D.*, No. 1:14-cr-00277-DLI

Dear Judge Irizarry:

We represent defendant Syed Imran Ahmed in the above-captioned matter pursuant to the Criminal Justice Act ("CJA"). We write in response to the government's June 16 letter stating its intent to read all attorney-client communications between counsel and Dr. Ahmed sent via the Bureau of Prison's email system (TRULINCS) in this action.

As an initial matter, the government's letter mischaracterizes the parties' prior correspondence on this issue. On June 11, 2014, members of the district's CJA Panel received notice from Magistrate Judge Pollak that the U.S. Attorney's Office for the Eastern District of New York ("Office") was taking the position that communications between counsel and their clients over TRULINCS are not privileged. After receiving this notice, I emailed government counsel in this case to ask whether the prosecution team intended to read my communications with Dr. Ahmed over TRULINCS. Contrary to the government's representation in its June 16 letter, I did not assert that "such correspondence . . . is a protected attorney-client communication." [1] While the government chose not to respond directly to my email, its June 16 letter to Your Honor makes clear its answer to my inquiry is an unequivocal yes – the prosecution team does intend to read my communications with Dr. Ahmed.

Regardless of whether such communications qualify for protection under the attorney-client privilege, the government's decision to read our communications with our client is entirely wrong, particularly given the circumstances of this case. As explained below, the government's decision

---

[1] Attached hereto as Exhibit A is a copy of my email to government counsel dated June 11, 2014 on this issue.



will frustrate Dr. Ahmed's access to counsel and waste critical and precious CJA resources. Thus, we respectfully request the Court order the government to segregate and not review all correspondence between Dr. Ahmed and his attorneys of record in this action sent over TRULINCS.

It is well-settled that federal courts have broad powers to control their proceedings, including over matters related to discovery. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (Federal court's inherent powers arise from "'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'") (citation omitted); *United States v. Sachakov*, 812 F. Supp. 2d 198, 206 (E.D.N.Y. 2011) (noting that federal courts have "broad discretion" to "fashion[] appropriate remedies in both civil and criminal matters."); *United States v. Taylor*, 25 F.R.D. 225, 228 (E.D.N.Y. 1960) (court retains inherent power relating to matters of discovery); *see also Geders v. United States*, 425 U.S. 80, 86 (1976) ("Our cases have consistently recognized the important role the trial judge plays in the federal system of criminal justice . . . . The trial judge must meet situations as they arise and to do this must have broad power to cope with the complexities and contingencies inherent in the adversary process.") (citation omitted). The court's inherent powers are even broader in criminal matters, *see Crawford v. United States*, 212 U.S. 183, 194 (1909), and may be invoked to protect a party's legal rights. *See Shipp v. Todd*, 568 F.2d 133, 134 (9th Cir. 1978) (federal courts have inherent power to expunge criminal records "'when necessary to preserve basic legal rights.'") (citations omitted).

Here, the government's decision to read all of our communications with Dr. Ahmed over TRULINCS frustrates Dr. Ahmed's right to access of counsel. As the Supreme Court has said, "[t]he right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled." *Strickland v. Washington*, 466 U.S. 668, 685 (1984) (citations omitted). The right of access to counsel is even more crucial now, pre-trial, as this is the "most critical period of the proceedings . . . when consultation, thorough-going investigation and preparation are vitally important[.]" *Massiah v. United States*, 377 U.S. 201, 205 (1964) (internal marks and citation omitted). This is especially true here given the complexity of this case and the need for Dr. Ahmed to actively participate with counsel to prepare his defense. Since our appointment a few weeks ago, the government has produced to counsel approximately 50,000 pages of discovery with much more certain to follow. Much of this discovery includes Medicare claim data and patient information that we need Dr. Ahmed's assistance to understand. It will be extremely burdensome and time-consuming to arrange an in-person meeting or seek approval for an un-monitored telephone call with Dr. Ahmed each time we have a question about a document in this case.

The government's assertion to the contrary ignores reality. The MDC does not accept mail sent via expedited mail services, and in our experience it can take two or more weeks for an inmate to receive U.S. mail – which, of course, does not include the additional time it will take for us to receive his response. Moreover, while the government contends that we may communicate with Dr. Ahmed via un-monitored telephone calls, each of these calls must be pre-approved and arranged in



advance. Since receiving the government's letter, we have made numerous attempts over several days to learn how we can obtain approval for a single un-monitored telephone call with Dr. Ahmed, to no avail. *See* Declaration of Anthony M. Geritano dated June 20, 2014 (attached hereto as Exhibit B). The fact that we cannot even learn, in a timely fashion, how to set up an un-monitored telephone call belies the government's contention that this is a viable alternative to TRULINCS.[2] Finally, although in-person meetings do not need to be scheduled in advance, they are extremely time consuming. It takes counsel over two hours to travel to and from the MDC, and can take an additional hour once at the facility before we are permitted to meet with our client. While under normal circumstances counsel's travel time may not be relevant, as the Court is aware, we were appointed to represent Dr. Ahmed pursuant to the CJA. While Catherine Grealis is assisting pro bono, the public pays my hourly fees. Indeed, our last meeting required close to five hours of time – much of which was spent in transit – costing the CJA more than $600 (at $125/hour). We are tasked with using CJA funds in "the most fiscally responsible fashion." *See* Second Circuit CJA Policy and Procedure Manual, at 2 (Dec. 17, 2013), *available at* http://www.ca2.uscourts.gov/clerk/attorneys/cja_manual.html (last visited June 18, 2014). While in-person visits will, of course, be necessary, it is considerably more cost-effective and efficient for us to communicate with Dr. Ahmed via TRULINCS than to expend significant time – and scarce public resources – traveling to and from the MDC or seeking approval for an un-monitored telephone call each time we need to speak with him about his case.

Despite the government's protestations that its decision to read our attorney-client communications with Dr. Ahmed "is not borne out of a hope to gain a strategic advantage" (June 16 letter at 4), it has offered no rational basis for its position. Its assertion that it would be a "tremendous waste" of resources to segregate and not review our communications with Dr. Ahmed (*Id.* at 4 n.3) is unconvincing. To the contrary, it would appear to be as simple as sorting Dr. Ahmed's emails by sender and recipient—a task that should take a matter of minutes and hardly needs a team of additional Assistant U.S. Attorneys to accomplish (*Id.*). This seemingly insignificant undertaking hardly justifies the substantial burden on CJA counsel and Dr. Ahmed, and significant waste of judicial resources.

For the reasons set forth above, we respectfully request that the Court order the government to segregate and not review any emails sent between Dr. Ahmed and his attorneys of record in this action via the TRULINCS system.

---

[2] Even if we obtain approval for an un-monitored call, there are practical difficulties inherent in communicating about Dr. Ahmed's case over the telephone. For example, we cannot review or ask questions about documents over the phone as Dr. Ahmed will not have the documents in front of him. This will necessitate follow-up calls, which are not only time consuming but also burden MDC staff who have to accompany Dr. Ahmed to the un-monitored calls.

**WSGR** Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

I look forward to addressing this matter at the June 27th status conference.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

s/ Morris J. Fodeman
Morris J. Fodeman

cc:  F. Turner Buford (via CM/ECF)
     William Patrick Campos (via CM/ECF)
     Erin Argo (via CM/ECF)