**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:14-cr-00277-DLI |
| | ) | |
| Plaintiff, | ) | ECF Case |
| | ) | |
| - against - | ) | ORAL ARGUMENT REQUESTED |
| | ) | |
| SYED IMRAN AHMED, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**DEFENDANT SYED IMRAN AHMED'S MEMORANDUM OF LAW IN OPPOSITION**
**TO THE GOVERNMENT'S SECOND SET OF MOTIONS IN LIMINE**

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS....................................................................................................I

TABLE OF AUTHORITIES ............................................................................................II

ARGUMENT ....................................................................................................................1

I.  THE COURT SHOULD ALLOW CROSS-EXAMINATION ABOUT
    PHYSICIAN WITNESSES' PRIOR MALPRACTICE ACTIONS ........................1

II. THE COURT SHOULD ALLOW ADMISSION OF DEFENDANT'S PRIOR
    OUT-OF-COURT STATEMENTS ........................................................................5

III. THE COURT SHOULD PRECLUDE TESTIMONY FROM DEFENDANT'S
     FORMER BUSINESS PARTNER ........................................................................9

CONCLUSION ................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

*Beech Aircraft Corp. v. Rainey*,
   488 U.S. 153 (1988)...................................................................................................5

*Huddleston v. United States*,
   485 U.S. 681 (1988).................................................................................................13

*Kaufman v. Columbia Mem'l Hosp.*,
   No. 1:11-CV-667 MAD/CFH, 2014 WL 3888229 (N.D.N.Y. Aug. 7, 2014)..........3

*Lopez v. Miller*,
   915 F. Supp. 2d 373 (E.D.N.Y. 2013) ....................................................................10

*Navarro de Cosme v. Hosp. Pavia*,
   922 F.2d 926 (1st Cir. 1991)......................................................................................2

*Old Chief v. United States*,
   519 U.S. 172 (1997).................................................................................................14

*Phoenix Assocs. III v. Stone*,
   60 F.3d 95 (2d Cir. 1995).....................................................................................5, 6, 7

*Rheinfrank v. Abbott Labs., Inc.*,
   No. 1:13-CV-144, 2015 WL 5258858 (S.D. Ohio Sept. 10, 2015) ......................2, 4

*United States v. Allen*,
   116 F. App'x 210 (10th Cir. 2004) .....................................................................12, 13

*United States v. Carboni*,
   204 F.3d 39 (2d Cir. 2000).......................................................................................11

*United States v. Carneglia*,
   256 F.R.D. 384 (E.D.N.Y. 2009)..............................................................................10

*United States v. Castro*,
   813 F.2d 571 (2d Cir. 1987).......................................................................................6

*United States v. Castro-Cabrera*,
   534 F. Supp. 2d 1156 (C.D. Cal. 2008) .....................................................................6

*United States v. Coplan*,
   703 F.3d 46 (2d Cir. 2012).........................................................................................6

*United States v. Detrich*,
    865 F.2d 17 (2d Cir. 1988)...............................................................................8

*United States v. DiMaria*,
    727 F.2d 265 (2d Cir. 1984)...............................................................................8

*United States v. Esquivel*,
    755 F. Supp. 434 (D.D.C. 1990) .......................................................................8

*United States v. Forrester*,
    60 F.3d 52 (2d Cir. 1995)..................................................................................10

*United States v. Gilan*,
    967 F.2d 776 (2d Cir. 1992)..............................................................................13

*United States v. Halper*,
    590 F.2d 422 (2d Cir. 1978)........................................................................13, 14

*United States v. Harris*,
    733 F.2d 994 (2d Cir. 1984)...............................................................................9

*United States v. Marin*,
    669 F.2d 73 (2d Cir. 1982).................................................................................9

*United States v. Mermelstein*,
    487 F. Supp. 2d 242 (E.D.N.Y. 2007) .........................................................13, 14

*United States v. Merritt*,
    No. IP 01–081–CR–01 T/F, 2002 WL 1821828 (S.D. Ind. June 27, 2002) ...........7

*United States v. Nachamie*,
    28 F. App'x 13 (2d Cir. 2001) ........................................................................2, 3

*United States v. Nachamie*,
    101 F. Supp. 2d 134 (S.D.N.Y. 2000)...........................................................13, 14

*United States v. Peeples*,
    No. 01 CR 496, 2003 WL 57030 (N.D. Ill. Jan. 7, 2003).......................................7

*United States v. Pipola*,
    83 F.3d 556 (2d Cir. 1996)................................................................................12

*United States v. Robinson*,
    702 F.3d 22 (2d Cir. 2012)...........................................................................11, 12

*United States v. Taylor*,
    17 F. Supp. 3d 162 (E.D.N.Y. 2014) ........................................................11

*United States v. Walia*,
    No. 14–CR–213 (MKB), 2014 WL 3734522 (E.D.N.Y. July 25, 2014)............................5, 6

*Upky v. Lindsey*,
    No. CIV 13-0553 JB/GBW, 2015 WL 3862944 (D.N.M. June 3, 2015) .................................1

*Waconda v. United States*,
    No. CIV 06-0101JB/ACT, 2007 WL 2461624 (D.N.M. May 31, 2007)..................................2

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & PMF Products Liab. Litig.*,
    No. 3:09-CV-10012-DRH, 2011 WL 6740391 (S.D. Ill. Dec. 22, 2011)................................2

### STATUTES & RULES

Fed. R. Evid. 106 ..........................................................................5, 7

Fed. R. Evid. 404(b)...............................................................11, 12, 13

Fed. R. Evid. 801 ..........................................................................10

Fed. R. Evid. 802 ..........................................................................10

Fed. R. Evid. 803(3)..................................................................5, 8, 9

Defendant Syed Imran Ahmed ("Defendant" or "Dr. Ahmed"), by and through his undersigned counsel, respectfully submits this memorandum of law in opposition to the Government's Second Set of Motions in Limine ("Motions"), dated June 10, 2016.  As discussed below, in its Motions, the Government seeks (1) to preclude cross-examination on certain issues, (2) to preclude the introduction of portions of Defendant's prior statements to law enforcement witnesses, and (3) the admission of statements from a former business partner of Dr. Ahmed.  Dr. Ahmed opposes each of the Motions.

<u>ARGUMENT</u>

I.      **The Court Should Allow Cross Examination About Physician Witnesses' Prior Malpractice Actions**

In its brief, the Government explains that four of its witnesses—all physicians—have a history of medical malpractice litigation.  The Government briefly notes the litigation its expert, Dr. Frank Ross, has faced, and identifies malpractice actions against Dr. Maryann Bilotti, Dr. Greg Zito, and Dr. Mohammed Islam.  We expect that these three witnesses will testify about topics that include their treatment of wound care patients and their supervision of Dr. Ahmed in his treatment of patients.

The Government seeks to preclude the defense from cross-examining these physicians about the malpractice actions they have faced.  That motion should be denied.

A.      <u>Dr. Ross</u>

A number of courts have allowed physician experts to be questioned about prior malpractice actions against them.  Such testimony is appropriate "[b]ecause an expert's credentials, expertise, competency, and experience are at issue."  *Upky v. Lindsey*, No. CIV 13-0553 JB/GBW, 2015 WL 3862944, at *20 (D.N.M. June 3, 2015) (allowing defendant to question plaintiff's expert physician about prior malpractice litigation "to show that the expert

lacks the requisite expertise and competence to give expert opinions"); *see Navarro de Cosme v. Hosp. Pavia*, 922 F.2d 926, 932-33 (1st Cir. 1991) (concluding that questioning about three prior medical malpractice cases against expert was appropriate, noting that the district court found that expert's "performance as a physician" was at issue); *Rheinfrank v. Abbott Labs., Inc.*, No. 1:13-CV-144, 2015 WL 5258858, at *8 (S.D. Ohio Sept. 10, 2015) (explaining that prior-lawsuit evidence was "relevant and may be useful in helping the jury assess expert credibility and competency on cross-examination" and would be "generally" admissible in examination of expert physician); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & PMF Products Liab. Litig.*, No. 3:09-CV-10012-DRH, 2011 WL 6740391, at *13-*14 (S.D. Ill. Dec. 22, 2011) (allowing cross-examination of defense expert physician about medical malpractice lawsuit filed "many years ago"); *Waconda v. United States*, No. CIV 06-0101JB/ACT, 2007 WL 2461624, at *6 (D.N.M. May 31, 2007) ("[T]he Court will admit evidence regarding other medical malpractice lawsuits that have been brought against [plaintiff's] experts.  The Court believes that, when an individual testifies as an expert, they necessarily open themselves up to an evaluation of their credibility and experience.").

In a Medicare fraud case, the Second Circuit addressed the issue in a way that supports Defendant's position.  *See United States v. Nachamie*, 28 F. App'x 13 (2d Cir. 2001).  In *Nachamie*, the defense learned, after cross-examining the Government's expert, that the expert had settled a medical malpractice case and sought to recall the witness for additional cross-examination.  The district court denied the motion and the Circuit affirmed.  In its decision, the Circuit noted that the defendant "could have discovered the settlement prior" to the cross-examination and had "ample opportunity" to cross-examine the expert.  *Id.* at 20.  Nowhere did the Circuit suggest that such inquiry would have been inappropriate in any way.

-2-

The Government cites only a single federal case in support of its motion to preclude.  *See* Gov't Br. at 6 (citing *Kaufman v. Columbia Memorial Hospital*, No. 1:11-CV-667 MAD/CFH, 2014 WL 3888229 (N.D.N.Y. Aug. 7, 2014)).  That case is distinguishable because the proffered testimony—about the plaintiff, not a third-party expert—presented a serious danger of jury confusion that is absent here.

In *Kaufman*, the plaintiff physician sued his former employer, a hospital, for wrongful termination.  The court concluded that the hospital would not generally be permitted to offer evidence about prior malpractice claims to show that its termination decision was justified, citing unfair prejudice to the plaintiff and possible confusion of the issues.  *Id.* at *4.  The court did, however, note that it would permit some evidence of malpractice claims—namely, actions that the hospital was aware of at the time of the termination that related to plaintiff's conduct at the hospital.  *Id.* at *4 n.4.  The *Kaufman* court's conclusion underscores that evidence of malpractice does bear on a physician's competence.

Here, by offering Dr. Ross as an expert, the Government is asking the jury to credit his medical judgment.  Instances in which he erred are probative of the soundness of his judgment.  Accordingly, the Court should allow the defense to cross-examine Dr. Ross about malpractice actions that have been brought against him.

B.     Drs. Bilotti, Zito, and Islam

The Government also seeks to preclude the defense from cross-examining Drs. Bilotti, Zito, and Islam about malpractice actions filed against them.  In its brief, the Government asserts

that these three physicians will testify as fact witnesses.  Yet we anticipate that these witnesses will offer testimony that is shaped by their medical training and experience.[1]

Specifically, we expect, based on the 3500 material, that Dr. Bilotti will testify to topics that include (i) her reasons for treating in a certain manner one of the patients whose claims are at issue; (ii) whether it would be appropriate to apply two different treatment medications to a wound simultaneously; and (iii) whether it would be standard practice to perform wound debridements in a particular way.  *See* GX-3500-MB-1, at 1-2.  Likewise, Dr. Zito's interview summary indicates that he discussed with the Government steps that would be followed when performing various wound care procedures.  *See* GX-3500-GZ-1 at 1.  And the Government's brief asserts that Dr. Islam taught Dr. Ahmed which billing codes were appropriate for wound care procedures and details an instance in which Dr. Islam allegedly disagreed with Dr. Ahmed about whether a particular billing code could be used for a procedure.  *See* Motions at 9-10.  The interview summary adds that Dr. Islam expressed his view that Dr. Ahmed was overly aggressive in his billing.  *See* GX-3500-MI-2 at 2.

Although these witnesses have not been designated as experts, the reasons that courts have allowed expert witnesses to be questioned about prior malpractice actions apply equally here: the "credibility and competency" of these physicians will be at issue on cross-examination, and evidence of prior malpractice suits "is relevant and may be useful" to the jury in making that assessment.  *Rheinfrank v. Abbott Labs., Inc.*, No. 1:13-CV-144, 2015 WL 5258858, at *8 (S.D. Ohio Sept. 10, 2015).  The Government's motion should be denied.

---

[1] Dr. Ahmed reserves the right to object at trial to testimony from these witnesses that exceeds the bounds of permissible lay testimony.

## II.      The Court Should Allow Admission of Defendant's Prior Out-of-Court Statements

The Government seeks to preclude certain statements Dr. Ahmed made to agents from the Department of Health and Human Services in a September 3, 2013 interview (the "September 2013 Interview") as inadmissible hearsay.  As set forth below, because Dr. Ahmed's statements are admissible under Federal Rules of Evidence 106 and 803(3), the Government's motion should be denied.

### A.      The Prior Statements Are Admissible Under the Rule of Completeness

Rule 106, which derives from the common law "rule of completeness," provides that "if a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."  Fed. R. Evid. 106.

This Rule applies to documents and statements, and is predicated on a "principle of fairness requiring the introduction of an entire or related document if necessary for the 'fair and impartial understanding of the admitted portion' or document."  *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 102 (2d Cir. 1995) (internal citations omitted); *see also United States v. Walia*, No. 14-CR-213 (MKB), 2014 WL 3734522, at *8 (E.D.N.Y. July 25, 2014) (same); *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988) (referring to the common law rule of completeness and noting that when "one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is *ipso facto* relevant and therefore admissible").  Thus, when a party introduces only part of a document into evidence, Rule 106 requires that the entire document (or portion thereof) be admitted if it is necessary to (1) explain the admitted part, (2) place the admitted part in context, (3) avoid misleading the jury, or (4) ensure a fair and impartial

understanding of the admitted part.  *Phoenix*, 60 F.3d at 102; *see also United States v. Castro*, 813 F.2d 571, 576 (2d Cir. 1987); *United States v. Castro-Cabrera*, 534 F. Supp. 2d 1156, 1160 (C.D. Cal. 2008) ("[T]he Rule of completeness was designed to prevent the Government from offering a 'misleadingly-tailored snippet." (internal quotation marks omitted)).  "This is true 'even though a statement may be hearsay.'"  *Walia*, 2014 WL 3734522, at *8 (quoting *United States v. Coplan*, 703 F.3d 46, 85 (2d Cir. 2012)).

In reporting the details of Dr. Ahmed's September 2013 Interview, the Government attempts to neatly divide it into three distinct topics: Doctor Ahmed's employment, billing practices, and wound care—as if each were discussed independently.  Motions at 7.  This characterization of the September 2013 Interview is contradicted by the agent's own handwritten notes, which make clear that the "three topics" were discussed contemporaneously and not sequentially as suggested.  *See* Ex. A.  For example, the second page of the agent's notes states "Billing by outside co. Medtech Solutions" (Government's "second topic"), followed on the next line by "W.C. [wound care] in hospitals, drain wounds" (Government's "third topic").  Ex. A at 2; Motions at 7.  Similarly, the agent also writes: "Sees WC [wound care] pats [patients] daily.  For WC [wound care] debridements not every day.  A lot of back and feet WC [wound care]" (Government's "third topic"), which is directly followed by "Had biller in NY" (Government's "second topic").  Ex. A at 3-4; Motions at 7.  As these examples demonstrate, Dr. Ahmed's statements concerning his wound care practice are inextricably intertwined with those concerning his employment and billing—his typical case-load and types of wound-care procedures impact and explain his billing practices—and thus, are admissible under Rule 106.  *See Castro-Cabrera*, 534 F. Supp. 2d at 1160 (where statements are inextricably intertwined, a "court must take care to avoid distortion or misrepresentation of the speaker's meaning, by

requiring that the statements be admitted in their entirety and allowing the jury to determine their meaning").

Moreover, Dr. Ahmed would be prejudiced if the Government is allowed to cherry-pick statements from the September 2013 Interview while simultaneously precluding Dr. Ahmed from offering others.  The volume and types of wound-care procedures performed by Dr. Ahmed, and his state of mind in conducting his billing for these procedures, will be central issues in this trial. Dr. Ahmed's statements concerning his wound care practices show that he was forthcoming during the September 2013 Interview and, if precluded from offering this evidence, the jury will be left to speculate as to why his wound care practices were not discussed during the interview, and may infer that Dr. Ahmed was endeavoring to conceal wrongdoing.  Accordingly, Dr. Ahmed should be allowed to introduce statements made during the September 2013 Interview to provide the jury with a complete understanding of the interview and events that followed.  *See United States v. Peeples*, No. 01-CR-496, 2003 WL 57030, at *3 (N.D. Ill. Jan. 7, 2003) (admitting statement that defendant did not touch weapon inside his jacket under Rule 106 as it would "place the statements offered by the prosecution in perspective and diminish the possibility that a juror hearing only that portion of the statement being offered by the prosecution will conclude that the defendant failed to deny turning and aiming his gun at the special agent"); *United States v. Merritt*, No. IP 01-081-CR-01 T/F, 2002 WL 1821828, at *2 (S.D. Ind. June 27, 2002) (admitting under Rule 106 exculpatory statements made during search of home because if "the exculpatory evidence is offered and excluded, the jury will be left with the mistaken impression that all of [defendant's] statements and actions during the search showed that he possessed the [weapons] in the vault"); *see also Phoenix*, 60 F.3d at 102 (concluding that Rule 106 required introduction of additional documents without which "the jury could not have

reached an 'impartial understanding' of appellant's financial statements" (internal citations omitted)).

   B.    The Prior Statements are Admissible as Nonhearsay and to Show Dr. Ahmed's
         Then-Existing State of Mind

   Dr Ahmed's statements during the September 2013 Interview are also admissible under Rule 803(3)'s hearsay exception to show his "then-existing state of mind (such as motive, intent, or plan) . . . ." Fed. R. Evid. 803(3). The Government intends to offer evidence to prove that Dr. Ahmed perpetuated a scheme to defraud Medicare that spanned several years, including, for example, that Dr. Ahmed wired money overseas within days of the September 2013 Interview to demonstrate his "knowledge and consciousness of guilt." *See* Government Opposition to Defendant's Motions in Limine, at 3-4 (Feb. 19, 2016) (ECF No. 97). In order to rebut the Government's theory, Dr. Ahmed should be permitted to introduce contemporaneous statements made during the September 2013 Interview which show his state of mind. The fact that he made statements to the agents concerning his wound care practice at the time of the interview shows his then-existing lack of intent and knowledge of wrongdoing. *See United States v. Detrich,* 865 F.2d 17, 19-21 (2d Cir. 1988) (finding the lower court erred in excluding co-defendant's out of court statement "I am getting married" where it was offered to prove the defendant's state of mind that he thought he was delivering a suit to the co-defendant for his wedding and not as part of a scheme to smuggle drugs into the country); *United States v. DiMaria*, 727 F.2d 265, 270-72 (2d Cir. 1984) (reversing conviction where court refused to admit defendant's statement that he only came to get cigarettes "real cheap" as it was relevant to his state of mind to possess bootleg cigarettes, not stolen cigarettes); *United States v. Esquivel*, 755 F. Supp. 434, 440 (D.D.C. 1990) (where government intended to offer evidence of defendant's flight and status as fugitive, defendant entitled to introduce evidence of his alleged co-conspirator's acquittal on same charges

for which defendant was being tried under Rule 803(3) to show state of mind during the period when he was a fugitive).

Additionally, and in any event, Dr. Ahmed's statements during the September 2013 Interview are admissible, not for their truth, but as circumstantial evidence of Dr. Ahmed's innocent state of mind.  *See United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) (distinguishing between defendant's prior statements used to prove the truth of the matter asserted as inadmissible hearsay if offered by defendant and those simply to show that the statement was made—if the fact that the statement itself was made is relevant, then it is admissible).  The statements made by Dr. Ahmed are relevant to show that he was cooperative and forthcoming with law enforcement witnesses and did not attempt hide anything with respect to his medical practices.  *See United States v. Harris*, 733 F.2d 994, 1004 (2d Cir. 1984) (holding that "statements were admissible, not for their truth, but instead as circumstantial evidence of the defendant's state of mind").

III.    **The Court Should Preclude Testimony from Defendant's Former Business Partner**

The Government seeks to elicit testimony from Dr. Ahmed's former business partner, Dr. Mohammed Islam, regarding Dr. Ahmed's medical billing practices generally and one instance of an alleged disagreement with Dr. Ahmed concerning an unnamed patient's billing.  For the reasons set forth below, the Court should preclude this testimony.

A.    Dr. Islam's Proposed Testimony Should Be Excluded As Inadmissible Hearsay

To the extent the Government seeks to elicit testimony from Dr. Islam as to the content of his discussion with an unnamed nurse and Dr. Islam's understanding of the patient's condition, medical treatment, and billing for the truth of the matter asserted, this testimony constitutes

inadmissible hearsay and must be excluded.[2]  Dr. Islam and Dr. Ahmed were only partners for

one year nearly a decade ago, and Dr. Islam and Dr. Ahmed did not use the same biller at the

time of the conversation.  Under Federal Rules of Evidence 801 and 802, "[a]ny statement that is

made by a declarant not testifying at trial, offered in evidence to prove the truth of the matter

asserted, is excluded" absent a hearsay exception.  *Lopez v. Miller*, 915 F. Supp. 2d 373, 423

(E.D.N.Y. 2013) (quoting *United States v. Carneglia*, 256 F.R.D. 384, 391 (E.D.N.Y. 2009)).

"[T]he principal vice of [hearsay] is that it deprives the opponent of the opportunity to cross-

examine the declarant."  *United States v. Forrester*, 60 F.3d 52, 59 (2d Cir. 1995) (internal

quotations omitted).  Such testimony cannot be used to prove the truth of the matter asserted—

that Dr. Ahmed was using improper procedure codes concerning a patient's treatment—because

Dr. Islam has no personal knowledge of these matters and could only have derived this

information from his conversation with the unnamed nurse.[3]  The patient chart, which the

unnamed nurse's report is ostensibly based, has not been admitted into evidence and the

unnamed nurse is not available for cross-examination.  Both the business record and the witness

should be made available to Defendant, as without the ability to challenge the underlying

evidence, Defendant will be unduly prejudiced.

---

[2] Although not cited in the Government's brief, Defendant also intends to preclude any statements Dr. Islam may make about speculation in the medical community regarding Dr. Ahmed's billing practices.  *See* GX 3500-MI-2 at 2 ("[Dr. Islam] explained that . . . [Dr. Ahmed's] once good reputation was now starting to diminish in every hospital he had privileges in . . . [Dr. Islam] recalled that Dr. Lois, the Chief of Surgery at KJMC, as well as a nurse and anesthesiologist told [Dr. Ahmed] to stop embellishing charts.").)

[3] There are also discrepancies between the description of Dr. Islam's proposed testimony contained in the Government's Motions and in the discovery.  In Dr. Islam's conversation with a Special Agent and Mr. Buford, Dr. Islam stated that the conversation he had regarding Dr. Ahmed's billing practices took place "[s]hortly after Ahmed switched billing companies from Jacob 'LNU' to REHAN [defendant's brother]."  GX 3500-MI-2 at 1-2.  This timeline does not match the Government's current characterization of Dr. Islam first warning Defendant that "his actions risked serious consequences," then "that the defendant told him that he (the defendant) was going to start using his brother to do his medical billing."  Motions at 10.  Furthermore, while the Government's brief states that Defendant called Dr. Islam "timid" (Motions at 10), the interview report characterizes the conversation differently: "[Dr. Ahmed] argued that he felt he was correct."  GX 3500-MI-2 at 2.

-10-

B.    Dr. Islam's Testimony Should Be Precluded Under Rule 404(b)

The Government contends that Dr. Islam's testimony is admissible either as direct evidence, not subject to the strictures of Federal Rule of Evidence 404(b), or as an exception to the Rule 404(b) bar against character evidence.  The Government fails to provide any relevant precedent.  As the Government asserts, "[E]vidence of uncharged criminal activity is not considered other crimes evidence under . . . [Rule] 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000).  The Government has offered no reason why Dr. Islam's testimony would fall into any of these three categories, and none of the cases cited by the Government support the argument it makes.  Dr. Islam's testimony as described in the motion is unreliable—it is based on a vague recollection of a conversation nine years ago, contains inconsistencies with his prior statements, and is based in part on hearsay.  Even if the testimony were reliable, the acts suggested are too attenuated in nature and time to meet the *Carboni* standard for direct evidence.

*United States v. Taylor* is unpersuasive because the uncharged act in that case, an arrest for firearm possession, was "related to the charged crimes in time, place, and nature" as to be direct evidence: for example, the uncharged conduct took place during the charged conspiracy, one block away from the conspiracy's narcotics storehouse, and firearm-related murder was charged in the indictment.  17 F. Supp. 3d 162, 180 (E.D.N.Y. 2014).  *United States v. Robinson*, 702 F.3d 22 (2d Cir. 2012), is equally unpersuasive.  In *Robinson*, the court upheld the defendant's conviction for sex trafficking of a minor, finding that recorded calls of the defendant threatening the victim with violence and discussing his former, current, and prospective control

-11-

over prostitutes with others were admissible.  *Id.* at 38-39.  Unlike the calls with the victim in

*Robinson* that were direct evidence of the charged offense, Dr. Islam's proposed testimony is

completely unrelated to the claims that the Government alleges are fraudulent.  *See id.* at

39.  Furthermore, while the recordings of the defendant describing his prior, current, and future

control over prostitutes in *Robinson* were necessary to complete the story of the charged crime,

Islam's proposed testimony amounts to little more than a third-party observer's view of separate

events that occurred over ten years ago.  *See id.* at 38.

  Similarly, Dr. Islam's testimony is not admissible as an exception under Rule 404(b)(2)

because the testimony would serve no purpose but establishing Dr. Ahmed's propensity to

commit a similar act.  Evidence of wrongful acts not in the indictment may be offered as proof of

"motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack

of accident."  Fed. R. Evid. 404(b).  "[E]vidence of other wrongs [may] be admitted so long as it

is relevant and it is not offered to prove criminal propensity."  *United States v. Pipola*, 83 F.3d

556, 565 (2d Cir. 1996).

  The Government argues that Dr. Islam's testimony is relevant to Defendant's

"knowledge" and "intent" and goes to show "absence of mistake or lack of accident" of

Defendant's selection of certain billing codes.  However, the nature of this proposed evidence

stands in stark contrast to the evidence contested in *United States v. Allen*, which the

Government cites in support of this exception.  In *Allen*, the court admitted mutually

corroborative testimony of two of the defendant physician's former colleagues—a physician who

the defendant admonished for "underbilling" and saw the defendant alter signed bills and a clerk

who the defendant had instructed to alter bills just months before the charged conduct—because

it was reliable and relevant evidence of the defendant's lack of mistake in submitting false

claims. 116 F. App'x 210, 213-14 (10th Cir. 2004). It is wholly fanciful to suggest that any of Dr. Islam's testimony relating generic billing practices, determinations of the relevant procedure codes for surgical procedures, or a conversation based on hearsay events nine years ago could support this showing.

C.   Dr. Islam's Testimony Should Be Precluded Under Federal Rules of Evidence 402 and 403

Even if the evidence is being offered for a proper purpose under Rule 404(b), this Court must still determine whether the evidence is "relevant to an issue in the case pursuant to Rule 402, as enforced through Rule 104(b)." *United States v. Gilan*, 967 F.2d 776, 780 (2d Cir. 1992) (citing *Huddleston v. United States*, 485 U.S. 681, 691 (1988)). Rule 404(b) evidence is "[n]either presumed relevant [n]or automatically admissible." *See United States v. Halper*, 590 F.2d 422, 432 (2d Cir. 1978).

The Government has failed to demonstrate how Dr. Islam's testimony relating to Dr. Ahmed's treatment of one patient years before the events charged in the indictment is relevant "to an issue truly in dispute[.]" *Id.*; *see also United States v. Nachamie*, 101 F. Supp. 2d 134, 137-38 (S.D.N.Y. 2000) (stating that the government bears the burden of demonstrating the admissibility of evidence under Rule 404(b)). A single instance that occurred nine years ago, and five years before the charged events, is irrelevant to showing any "inception of [Defendant's] scheme to defraud Medicare and his knowledge of the proper wound debridement codes" because it relates to events that occurred outside the period charged in the indictment (January 2011 through December 2013) and is based on pure speculation. Indictment at 5. The Government's citation to *United States v. Mermelstein* to support its argument is unpersuasive. In *Mermelstein*, the defendant moved to preclude fraudulent Medicare claims which originated before the charged time period in the indictment. 487 F. Supp. 2d 242, 264 (E.D.N.Y. 2007).

However, the court relied on the fact that the beneficiary claims predating the indictment were directly tied to the charged crimes and would be referenced by the prosecution's expert witness. Here, there is no such reference to the patient; indeed, Dr. Islam cannot even identify the beneficiary at issue. Furthermore, the court in *Mermelstein* described "a single scheme to defraud . . . perpetrated through an ongoing pattern of narrowly defined criminal behavior" that was "perpetrated in essentially the same manner throughout the period charged in the indictment." *Id.* at 255. Dr. Ahmed's alleged wrongs do not bear the same relationship to the charged conduct. The acts Dr. Islam purports to describe are simply too far apart in time and method to be comparable to the cohesive scheme represented by the uncharged acts evidence in *Mermelstein*.

Furthermore, "even if the evidence is deemed relevant, the trial court must still weigh the probative value of the evidence against its prejudicial consequences before admitting it." *Halper*, 590 F.2d at 432. In making this determination, the Court must first determine whether the evidence increases the likelihood of unfair prejudice. *Nachamie*, 101 F. Supp. 2d at 141. If it does, the Court must "evaluate the degrees of probative value and unfair prejudice not only for the item in question but for any actually available substitutes as well…[A] judge applying Rule 403 could reasonably apply some discount to the probative value of an item of evidence when faced with less risky alternative proof going to the same point." *Old Chief v. United States*, 519 U.S. 172, 182-83 (1997); *see also Nachamie*, 101 F. Supp. 2d at 141 (same). The admission of such testimony from Dr. Islam relating to his disagreement with Dr. Ahmed would be highly prejudicial to Defendant. The Government's assertion that Dr. Islam's testimony is "no more prejudicial than evidence the government intends to offer to prove the crime with which [Defendant] is charged" is hardly persuasive—any such statement that Dr. Ahmed was allegedly

making potentially fraudulent claims in 2007 will distract the jury and cause jurors to assume

that Dr. Ahmed engaged in a pattern of conduct that is not founded in the evidence.

## **CONCLUSION**

For the reasons set forth above, the Court should deny the Government's Motions.


Dated:  June 17, 2016                        WILSON SONSINI GOODRICH & ROSATI
                                             Professional Corporation

                                             By:    s/ Morris J. Fodeman
                                                    Morris J. Fodeman
                                                    1301 Avenue of the Americas, 40th Floor
                                                    New York, New York 10019
                                                    Telephone:  (212) 999-5800
                                                    Facsimile:  (212) 999-5899


                                             DAVIS POLK & WARDWELL LLP

                                             By:    s/ Greg D. Andres
                                                    Greg D. Andres
                                                    450 Lexington Avenue
                                                    New York, New York 10017
                                                    Telephone:  (212) 450-4000
                                                    Facsimile:  (212) 701-5724


                                             *Attorneys for Defendant Syed Imran Ahmed*


-15-